1           UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF OHIO
2                  EASTERN DIVISION

3                    - - - - -

4    UNITED STATES OF AMERICA,          )
                                        )
5                     Plaintiff,    )   Case No.
                                        )
6              vs.                  )   1:22CR721
                                        )
7    ISAAC WOOLLEY,                     )
                                        )
8                     Defendant.    )

9

10                   - - - - -

11     TRANSCRIPT OF PROCEEDINGS HAD BEFORE MAGISTRATE

12    JUDGE JONATHAN D. GREENBERG, MAGISTRATE JUDGE OF

13      SAID COURT, ON THURSDAY   , JUNE 27TH, 2023,

14        COMMENCING AT 1:24 O'CLOCK P.M.

15                   - - - - -

16

17   Court Reporter:           GEORGE J. STAIDUHAR
                               801 W. SUPERIOR AVE.,
18                             SUITE 7-184
                               CLEVELAND, OHIO 44113
19                             (216) 357-7128

20                   - - - - -

21

22

23

24

25

1    **APPEARANCES:**

2        On behalf of the Government:

3
        OFFICE OF THE U.S. ATTORNEY
4        BY:  BRIAN S. DECKERT, AUSA
               DANIEL J. RIEDL, AUSA
5        801 W. Superior Avenue, Suite 400
         Cleveland, OH 44113
6

7        On behalf of the Defendant:

8        ANTHONY J. VEGH, ESQ.
         220 Leader Building
9        526 Superior Ave., E
         Skylight Office Tower, Suite 750
10       Cleveland, OH 44114

11

12                  - - - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE COURT:  Thank you.  Please be seated.

3          (Case called.)

4          THE COURT:  Good morning.  On behalf -- good

5   afternoon -- on behalf of the United States?

6          MR. DECKERT:  Good afternoon, your Honor.

7   Brian Deckert on behalf of the United States, and seated

8   with me at counsel table is Dan Riedl.

9          THE COURT:  Mr. Deckert, will you be

10  speaking on behalf of the United States?

11         MR. DECKERT:  I will, your Honor.

12         THE COURT:  Very well.  On behalf of the

13  Defendant?

14         MR. VEGH:  Tony Vegh on behalf of

15  Isaac Woolley.  Good afternoon.

16         THE COURT:  Good afternoon.  Sir, you are

17  Isaac Woolley?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Can you speak into that

20  microphone for me so I can hear you?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Good afternoon.

23         THE DEFENDANT:  Good afternoon, sir.

24         THE COURT:  We are here this afternoon for a

25  scheduled detention hearing.

1          Mr. Deckert, for purposes of today's

2   proceedings, would you please state the charges and

3   penalties?

4          MR. DECKERT:  Yes, your Honor.  Mr. Woolley

5   was charged in a multiple count indictment by a Grand

6   Jury sitting in the Northern District of Ohio, returned

7   December 15, 2022.

8          It is a six-count indictment.  The first

9   count alleges a violation of Title 49 of the United

10  States Code, Sections 4631(4)(a) and (b)(2), entering

11  aircraft or airport area in violation of security

12  requirements.

13          It carries a maximum term of imprisonment of

14  10 years, a fine of $250,000 maximum, a maximum term of

15  supervised release of three years, and a $100 special

16  assessment.

17          Count 2 is a violation of Title 18 of the

18  United States Code, Section 37(a)(2), violence at

19  international airports, a maximum term of imprisonment of

20  20 years, a maximum fine of $250,000, maximum term of

21  supervised release of three years, and a $100 special

22  assessment.

23          Counts 3 and 4 are violations of Title 18 of

24  the United States Code, Section 2119(1), carjacking.

25          It is 25 years maximum imprisonment, a

1    maximum fine of $250,000, a maximum term of supervised

2    release of five years, and a $100 special assessment.

3                Count 5 is a violation of Title 18 United

4    States Code, Section 32(a)(3), destruction of aircraft or

5    aircraft facilities.

6                It is a maximum term of imprisonment of

7    20 years, a maximum fine of $250,000, maximum term of

8    supervised release of three years, and a $100 special

9    assessment.

10                Count 6 finally is a violation of Title 18

11    United States Code, Section 32(a)(5), destruction of

12    aircraft or aircraft facilities, again as above, a

13    20-year maximum imprisonment term, maximum fine of

14    $250,000, maximum three-year supervised release term, and

15    a $100 special assessment

16                THE COURT:  Mr. Deckert, is this a

17    presumption matter?

18                MR. DECKERT:  Your Honor, this is a

19    presumption, a rebuttable presumption of detention.

20                THE COURT:  Thank you very much.

21                Now, Mr. Woolley, you have a constitutional

22    right to be represented by an attorney at every stage of

23    these proceedings.  If you are unable to afford an

24    attorney, the Court will appoint one to represent you at

25    no cost.

1          Sir, do you understand your right to an

2     attorney?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Now, Mr. Tony Vegh is the

5     attorney who has previously been appointed to represent

6     you in this matter.

7          Is that correct?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Now, Mr. Woolley, you also have

10    a right to remain silent.  You are not required to make a

11    statement, and anything you say may be used against you.

12    If you start to make a statement you may stop at any

13    time.  And you also may consult with your attorney,

14    Mr. Vegh, at any time.

15          Do you understand your right to remain

16    silent?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Very well.  Mr. Deckert, is the

19    United States prepared to proceed?

20          MR. DECKERT:  It is, your Honor.

21          THE COURT:  Mr. Vegh, are you prepared to

22    proceed?

23          MR. VEGH:  Yes, your Honor.

24          THE COURT:  Very well.  Mr. Deckert, go

25    ahead.

1          MR. DECKERT:  Your Honor, the Government

2     would proffer for the Court's consideration as part of

3     its presentation Exhibits 1, 2, and 3, which had been

4     previously provided to Court staff and provided in paper

5     form for the Court's consideration.  They provided to

6     Mr. Vegh previously as well.

7          For the record, Exhibit 1 is a memorandum in

8     support of pretrial detention that the Government filed

9     under Magistrate Judge No. 1:22MJ9279.

10          At the time of Mr. Woolley's arrest, a

11     criminal complaint was filed, and this memorandum was

12     filed in support.  In summary, it sets forth some of the

13     factual background of the case that makes up the charges

14     in the indictment, including some of the facts related to

15     the two carjackings as well as the videos from

16     Mr. Woolley driving a car through Cleveland Hopkins

17     International Airport --

18          THE COURT:  Mr. Deckert, sorry to interrupt

19     you.  When you say "facts," you mean the allegations?

20          MR. DECKERT:  That's correct, your Honor.

21          THE COURT:  You can remain seated if you

22     like.  I think we are mostly concerned with making sure

23     that you speak into the microphone so we can get down

24     everything you say.

25          MR. DECKERT:  Okay.  Thank you, your Honor.

1     It also provides some of the legal

2   justification as well.  Your Honor, the memorandum

3   provides some further information related to the risk of

4   flight in that being recorded jail communications that

5   were made or that were collected after his arrest.

6     The calls, the coded statements in the

7   memorandum, are of the Defendant that he makes on his

8   communications, that include descriptions of why he did

9   what he did, statements of leaving the country, and

10   things like that.  I'm sorry.  The statements that he

11   would do it again.

12     And also, your Honor, there is a description

13   of an incident in September of 2022 where the Defendant

14   left home and was -- his whereabouts were unknown for

15   seven days.

16     And ultimately, when Cleveland Police spoke

17   with him, he had indicated at that time that he was

18   intending to leave the country to go to the Ukraine and

19   participate in the military operations there.

20     The second exhibit is the complaint, which

21   sets forth an affidavit, and the allegations that make up

22   the complaint also are identical to the ones that make up

23   the superseding indictment as far as same justification

24   for the charges in the indictment.

25     The third is a competency evaluation report

1    that was ordered by the Magistrate Judge's initial

2    appearance.

3            Your Honor, I would submit this under seal

4    for the Court's consideration.  I will not go into

5    everything at argument about it, your Honor, for obvious

6    reasons, but I think there are some salient points

7    regarding risk of flight and danger for the community in

8    there.

9            So I would reserve for argument, your Honor,

10    after those proffers.

11            THE COURT:  Any objection, Mr. Vegh, on the

12    admission of Exhibits -- Government's Exhibit 3?

13            MR. VEGH:  No.

14            THE COURT:  Very well.  Do you have anything

15    further to proffer on behalf of the United States?

16            MR. DECKERT:  No, your Honor.

17            THE COURT:  Thank you, Mr. Deckert.

18            Mr. Vegh, anything to proffer, any witnesses

19    to put forward?

20            MR. VEGH:  I have no witnesses.  I would

21    like to proffer to the Court.

22            May I stand at the podium?

23            THE COURT:  Yes.

24            MR. VEGH:  Mr. Deckert mentioned some phone

25    conversations that were recorded shortly after my

1    client's arrest.  There is almost 200 phone

2    conversations.  I have listened to them all.

3                THE COURT:  I'm sorry to interrupt you

4    before you even start.

5                I am just looking -- I am going to give you

6    all the time you want to argue.

7                MR. VEGH:  Uh-huh.

8                THE COURT:  I just want to know your

9    proffers right now.

10               MR. VEGH:  My proffers simply though -- I'm

11   sorry, Judge.  Excuse me.

12               THE COURT:  Okay.

13               MR. VEGH:  Like most lawyers, it got right

14   into argument.

15               My only proffer is my client's DD Form

16   214.

17               THE COURT:  For the record, that is his

18   discharge from active duty?

19               MR. VEGH:  Correct.

20               THE COURT:  Very well.  If you are

21   comfortable at the podium, I think I am going to have the

22   United States argue first.  I will stick to my normal

23   procedure.

24               Anything further on behalf of the Defendant

25   before we go to argument?

1    MR. VEGH:  Other than that proffer and

2 argument.

3    THE COURT:  Very well.  That Defendant's

4 Exhibit A for proffer.

5    Argument on behalf of the United States?

6    MR. DECKERT:  Thank you.  Your Honor, I

7 would likewise like to use the podium.

8    THE COURT:  Please help yourself.

9    MR. DECKERT:  Your Honor, as stated in the

10 beginning, this is a case involving a rebuttable

11 presumption that no condition or combination of

12 conditions will reasonably assure the appearance of the

13 person as required and the safety of the community.

14    That's, in part, that is due to Mr. Woolley

15 being charged with an offense listed in Section

16 2332(b)(G)(5)(b) of Title 18 of the United States Code

17 for which there is a maximum term of imprisonment of ten

18 years or more.

19    For the record, Counts 1, 5, and 6 are

20 indeed listed in 2332(b)(G)(5)(b), and they are all

21 punishable by ten years or more, punishable by ten years

22 or more of imprisonment.

23    Now, a Grand Jury indictment itself

24 establishes probable cause to believe that a Defendant

25 committed the crime for which he is charged.

1        That is pursuant to United States versus

2   Hazen, 762 F.2d 34, Sixth Circuit 1985.

3        So based upon that and Title 18 United

4   States Code, Section 3142(e)(3)(C), that presumption

5   exists, and that imposes only a burden of production on

6   the Defendant.  The Government retains the burden of

7   persuasion in this matter.

8        Now, a Defendant will satisfy his burden

9   of production if he comes forward with evidence that he

10  does not pose a danger to the community or risk of

11  flight.

12       That's pursuant to United States versus

13  Mercedes 254 F.3d 433, Second Circuit 2001.

14       Now, a Defendant's burden of production is

15  not heavy, but he must introduce, at least, some

16  evidence.  A Defendant must introduce some evidence

17  contrary to presumed fact in order to rebut the

18  presumption.

19       I would argue in this case that there has

20  not been sufficient evidence put forward to rebut that

21  presumption.  But otherwise, the Government does retain

22  that burden of persuasion.

23       Now, in assessing the risk of flight and

24  danger to the community presumed by the Government, the

25  Court must assess several factors.

1          First, the nature and circumstances of the

2   offense charged; the weight of the evidence against the

3   Defendant; the history and characteristics of the

4   Defendant; and the nature and seriousness of the danger

5   to any person or the community that would be posed by the

6   person's release.

7          THE COURT:  Mr. Deckert, knowing the

8   Pretrial Services Report in as a proffer, is that

9   something you and Mr. Vegh would agree would be a joint

10  exhibit for purposes of today's hearing?

11         MR. DECKERT:  Yes, your Honor.

12         THE COURT:  Very well.  Go ahead.  Thank

13  you.

14         MR. DECKERT:  Now, those four factors that

15  are set forth in 3142(g)(1) through 4 the Government

16  argues they favor detention of Mr. Woolley.

17         First, looking at the nature and

18  circumstances of the offense charged, again, they are the

19  crimes -- they include crimes listed in 18 United States

20  Code, Section 2332(b)(G)(5)(b), also includes two crimes

21  of carjacking, which are considered crimes of violence

22  that had been categorized as crimes of violence under

23  924(c) by the Sixth Circuit in United States versus

24  Jackson, 918 F.3d, 467.  That's Sixth Circuit 2019.

25         So you have multiple offenses that qualify

1    as crimes of violence under the nature and circumstances

2    of the offense charged.

3              Further, looking at the complaint affidavit,

4    some of the facts set forth or the allegations set forth

5    in the memorandum, just briefly that the Defendant did by

6    force take two motor vehicles from victims, drove one

7    through a barrier onto a runway in Cleveland Hopkins

8    International Airport, causing damage to the lights

9    and the runway itself, requiring it to be shut down

10   while international airplanes were in the air and

11   causing a delay and, obviously, the redirection of

12   flights, some flights from Cleveland Hopkins

13   International Airport.

14              Looking next at the weight of the evidence

15   against the person, now, this is the weight of the

16   evidence of dangerous.  It is not the evidence going to

17   guilt but the evidence of dangerous.

18              And I think, your Honor, that goes back to

19   the nature and circumstances of the offense as well as

20   Exhibit 3, which is the competency evaluation of the

21   Defendant, and that leads to the history and

22   characteristics of the person.

23              There are several factors put forth that the

24   Court should look at, including the mental condition and

25   physical condition of the Defendant, his family ties, his

1    employment, past conduct, drug or alcohol use, and your

2    Honor, I don't want to go too in depth in Exhibit 3, I am

3    sure the Court can review it, but there are multiple

4    instances of the Defendant not taking medications he has

5    been prescribed, multiple hospitalizations at facilities

6    involving the Defendant inexplicably leaving the state

7    and driving in this case at late night.

8                    And in this case, that is, indeed, what

9    happened or at least involved driving a car at night and

10   leaving the house.

11                   THE COURT:  Is it the United States'

12   argument that he is a threat to the safety of the

13   community; that he is -- there is no reason to assure his

14   appearance or both?

15                   MR. DECKERT:  Both, your Honor.  It would be

16   both.

17                   THE COURT:  So you've just given me

18   some examples of why you think his appearance may be

19   an issue.

20                   MR. DECKERT:  Yes, your Honor.

21                   THE COURT:  Why don't you give me some

22   specifics without -- I appreciate the case law -- but

23   give me some specifics as relates to this case that

24   indicate to me why he is a threat of danger to the

25   community.

1          MR. DECKERT:  Your Honor -- and to be -- let

2    me put it forward this way:

3          The statute is not just that he is a danger

4    to the community, but any person as well, any one person

5    or the community.

6          THE COURT:  Correct.

7          MR. DECKERT:  To start with, first, the

8    Defendant, I believe, is a danger to himself.

9          THE COURT:  Okay.  Okay.

10          MR. DECKERT:  He has had three prior

11    attempts and ideations.  There have been -- now the

12    Defendant is facing criminal charges with lengthy prison

13    sentences, access to firearms or actually, your Honor, I

14    take that back.  I don't know if they have been removed

15    from the home, so I won't state that.

16          So you have danger to himself, danger to

17    others, the Defendant's statements, arrest is that the

18    motivation for this was due to a belief of his children

19    being in danger, and that he stated that he would do it

20    again over and over again if he could, and that he wanted

21    to be a martyr.

22          So these types of language, this language

23    and kinds of words indicate to the Government a danger to

24    the community as well.

25          The next --

1            THE COURT:  Well, what about the allegations

2       in the complaint of the activity?

3            Does that indicate to me that he is a danger

4       to the community?

5            MR. DECKERT:  Well, yes, your Honor.  The

6       allegations are that he randomly chose two individuals in

7       the community and forcibly took their vehicles.  One

8       person was dragged for approximately 150 feet and

9       suffered injuries, not to mention all the danger to the

10      individuals who were at the airport or in the air at the

11      time of his alleged actions.

12           THE COURT:  Anything further on behalf of

13      the United States?

14           MR. DECKERT:  Your Honor, just the other

15      factors that were listed under history and

16      characteristics of the person.

17           Family ties, I believe his only family tie

18      in the community is his current wife.  He described that

19      he has no contact with his other family members.

20           I do not believe he has --

21           THE COURT:  I believe he maintains a

22      relationship with his brother.  Is that right?  I am just

23      looking at the Pretrial Services Report.

24           MR. DECKERT:  You are right, your Honor.

25      There was an interview.

1      I do not believe he had an active employment

2  at the time, and there was some mention in the report,

3  the competency report, that there was use of alcohol and

4  drugs during some of the interactions that led him to be

5  hospitalized.

6      So your Honor, I think for all those reasons

7  the defense cannot rebut the presumption that there are

8  no condition or combination of conditions that would

9  reasonably assure Mr. Woolley's appearance or protect the

10  community.

11      Thank you.

12      THE COURT:  Thank you very much,

13  Mr. Deckert.

14      Mr. Vegh?

15      MR. VEGH:  Your Honor, I would like to

16  address a few things that Mr. Deckert brought up on

17  behalf of Mr. Woolley.

18      As far as phone conversations, as I was

19  beginning to say, there is 200 out of them, listened to

20  them all.  The Government has chosen a portion of one of

21  those conversations in his case.  I understand why they

22  are using it.

23      I could play conversation after conversation

24  where this man is weeping of being totally distraught,

25  destroyed, very sorry, saying very sorry for what he is

1    charged with, and how it has ruined his life.  I can play

2    many of those for the Court.

3              As far as him going away, walking away for

4    seven days, every once in a while I go away for three or

5    four days to fish.  My wife has a party when I am gone.

6              Me wanting to go fishing away from

7    everything for three or four days is not a crime.

8    Neither is it a crime for Mr. Woolley to want to get away

9    for whatever reasons he chooses as long as he is not

10   breaking the law, and he was not breaking the law in any

11   of those instances.

12             Your Honor, as far as danger, he has

13   no criminal record, none, none whatsoever, your Honor.

14   He is a --

15             THE COURT:  Does that rebut a presumption,

16   Mr. Vegh?

17             MR. VEGH:  I don't necessarily believe it

18   rebuts the presumption, but along with some of the other

19   things I say, I believe that in and of itself is enough,

20   but I have more than that.

21             He is a 27 year-old man who was honorably

22   discharged for medical reasons from the Army.  He is 100

23   percent a disabled Veteran.  Disability is a result of

24   his service to our country.

25             His DD 214 indicates that he was honorably

1    discharged for medical reasons, and he was awarded the

2    Army Good Conduct Medal, National Defense Service Medal,

3    Global War on Terrorist Service Medal, Army Service

4    Ribbon, Basic Aviation Badge, Expert Marksmanship Badge

5    with Carbine Bar, and Inherent Resolve Campaign Medal

6    with Campaign Star.

7              He is not just a disabled Vet; he is a

8    highly decorated Vet.

9              He has been receiving care at the VA since

10   coming back from the Army.  He has also received care

11   from VA in different locations where he served.

12             Your Honor, I would suggest to the Court

13   that his actions, his alleged actions that day was an

14   aberration in this young man's life.

15             THE COURT:  These are five pretty serious

16   aberrations, aren't they?

17             MR. VEGH:  Absolutely, Judge.  I don't for

18   one second downplay the seriousness of these charges, I

19   don't.  Also, as far as flight, doesn't have a car

20   because the car got repossessed.  He doesn't have a

21   driver's license because his driver's license was in the

22   car when it got repossessed.

23             He does have a passport to my understanding.

24   He does have a passport.  It is at his parents' home.

25   The Court should grant him some condition of bond.  I

1    would make sure that that passport was surrendered to the

2    Clerk.

3              He doesn't work because he is 100 percent

4    disabled, because of his service to our country.  He has

5    medical issues that I would suggest to the Court would

6    not be adequately addressed at NEOCC.

7              Anybody that knows anything about NEOCC,

8    that's the last place in the world you want to be with

9    any kind of serious medical condition whatsoever except

10   for maybe a headache.

11             THE COURT:  Was he treating his medical

12   condition before this?

13             MR. VEGH:  Yes, he was, and there were

14   periods of time when he lapsed as is very, very common in

15   these types of situations.

16             THE COURT:  Is that something the Court

17   should be concerned with if he were to be released, the

18   seriousness of the probability based on this conduct,

19   that some other conduct could be forthcoming during one

20   of these lapses?

21             MR. VEGH:  Well, I think, Judge, of course,

22   this Court should be concerned, but I think that there

23   are conditions that can be put on this young man that

24   would assure that he not reoffend, that he not flee,

25   and that he stay current with his therapies and

1    medication.

2              THE COURT:  Well, I think the obvious one

3    would be some kind of GPS monitoring.  What else would

4    you suggest could be a condition or combination of

5    conditions that would somehow tether him?

6              MR. VEGH:  I would think some sort of an

7    order that he obviously be highly supervised by pretrial,

8    and that he give them assurances that he is making all of

9    his appointments to the VA, taking the medications that

10   is prescribed by the VA and contact information at the VA

11   so that the probation officer can check up on him and

12   make sure he is doing what he is supposed to do.

13             THE COURT:  Does he have a family member who

14   can serve as a guardianship?

15             MR. VEGH:  His wife is sitting in the

16   courtroom.

17             THE COURT:  Is that yes?

18             MR. VEGH:  Yes.  This young lady here behind

19   me.  (Indicating.)

20             THE COURT:  Go ahead.  I interrupted you,

21   which I don't want to do.

22             MR. VEGH:  That's okay, Judge.  So your

23   Honor, I think there are conditions that can assure the

24   safety of the community.  We just talked about them.  I

25   think his risk of flight is minimal, minimal.  He just

1    doesn't have the means to go anywhere.

2              Unless the Court has anymore questions for

3    me, that's all I have, Judge.

4              THE COURT:  So you believe that his wife has

5    the wherewithal to tell him to stop if he is in the midst

6    of an episode?

7              MR. VEGH:  Your Honor, I have had a lot of

8    conversations with Bree, and I know that he has -- she is

9    a 100 percent advocate for him, and I know she will do

10   whatever she can to ensure that he complies.

11             THE COURT:  So again, I am kind of stuck

12   with the Pretrial Services Report, and it is six months

13   old.  I'm just trying to make sure I am reading it

14   correctly, no relationship with his parents.

15             Is that correct?

16             MR. VEGH:  It is strained.

17             THE COURT:  I will take that as a no

18   relationship.

19             He does have -- maintains a relationship

20   with his brother Jordan, correct?

21             MR. VEGH:  My understanding.

22             THE COURT:  It says that he is living with

23   his wife and father in law since November '21, but that

24   he is currently divorced.

25             Is that correct?

1    MR. VEGH:  Well, he was married previously.

2    The children that the prosecutor -- that Mr. Deckert

3    mentioned are the result of that marriage.  So he is

4    divorced from that woman, and he is married to Bree

5    Wilson, his second.

6    THE COURT:  Okay.  That's what I wasn't sure

7    of.  Okay.

8    I don't have any other questions, but thank

9    you very much.  I appreciate the sensitive nature of this

10   issue, this case.  This is an unusual case.  Thank you.

11   Mr. Deckert, would you like the last word

12   here?

13   MR. DECKERT:  No, your Honor.  Thank you.

14   THE COURT:  Very well.  Again, this is a

15   difficult circumstance in that the issue most clearly is

16   whether the Defendant has overcome the presumption.  The

17   Court is going to take the matter of detention under

18   advisement.  The Defendant shall remain in the custody of

19   the United States Marshal pending further order of the

20   Court.

21   Is there anything further on behalf of the

22   United States?

23   MR. DECKERT:  No, your Honor.  Thank you.

24   THE COURT:  Thank you, Mr. Deckert.

25   Anything further on behalf of the Defendant?

1          MR. VEGH:  No.  And we thank the Court.

2          THE COURT:  Thank you.  We are in recess.

3          (Hearing concluded at 1:53 p.m.)

4                    - - - - -

5    State of Ohio,      )
                         )  SS:
6    County of Cuyahoga,)

7

8              C E R T I F I C A T E

9

10         I, George J. Staiduhar, within and for the

11   State of Ohio, do hereby certify that the above

12   transcript is a true and accurate record of the hearing

13   held before Magistrate Judge Johnathan D. Greenberg.

14   This record was prepared from the K Drive of the

15   Court's computer.

16         IN WITNESS WHEREOF, I have hereunto set my

17   hand and seal of office in Cleveland, Ohio, on this

18   18th day of August A.D., 2023.

19

20

21                        s/George J. Staiduhar
                          George J. Staiduhar
22                        Notary Public - State of Ohio
                          My commission expires 8-1-2027
23

24

25